Per Curiam.
The action was for damages against two defendants, one being the constructor of an elevated railway, and the other the lessee of that railway, which ran through Division street, in front of houses, some owned and some leased by the plaintiff. The complaint alleged that the defendants had, without compensation to the plaintiff, appropriated the easement of air, light and access, belonging to the plaintiff’s land, through means of the railway structure itself, and also of the running of the locomotives and trains upon it. The judge charged the jury that the plaintiff could only recover the diminution of the rental value of his lands, caused by the wrongful acts of the defendants, as shown by the testimony. He charged that they should find to what extent, if any, the structure itself had caused a diminution, and further, “that if you find the use of the railway and its emission of smoke, gas and the flickering caused by passing trains, also are a use inconsistent with the legitimate use of the public street, and that, by reason of that use, the rental *437 value of plaintiff’s property has been seriously damaged, and that that use and that erection were the only cause of that damage, you will then find for the plaintiff, for the amount that you think that damage was.” He in effect charged the jury also, that the plaintiff’s recovery must be confined to the effects of such impairment of the easement of air, light and access, as the testimony proved. These charges follow the law announced in Taylor v. Metropolitan Elevated Railway Co. (50 Super. Ct. 311).
The plaintiff was allowed, under exception, to ask, “ what in your opinion would have been the fair rental value of this property immediately after the construction and operation of this road there ?” The defendant objected to the question, so far as it called for the effect of the operation of the road, on the ground that the plaintiff was entitled to recover only for the injury caused by the interference to fight, access and air, but nothing for the noise, smoke, smell or any of the inconveniences from the running of the road. The Taylor case decided in effect, as the judge charged, that there could be a recovery for the consequences of the running of locomotives and trains, provided it appeared that the manner of the running, and its physical effect, constituted a use of the street in fact other than, or beyond an ordinary and legitimate use of the street. The objection was not valid, as it assumed the contrary of this. There was before the case closed testimony given, which justified the submission to the jury of whether the running of the locomotives involved a use of the street other than the ordinary use. The ruling was consonant with the charge that a recovery could be only for an impairment of the easement of fight, air and access. The smoke, the gas, the cinders, the dropping, affected the easement, and may have impaired-it. Each one may have had an effect that lasted but a few minutes, but a repetition of them a jury had a right to find was a serious impairment of the easement.
The same considerations are to be applied to an objec *438 tion made to another question of the same kind, that it should be confined to the effect of the structure itself upon rental value.
A witness had said, that rents began to fall off in the neighborhood of the place in question, about a certain time. Another question was then asked, “When did the diminution in the volume of business there commence ?” This was objected to, on the ground that the falling off of the volume of business is not an element of damage. The objection was overruled. The answer, however, was not injurious to the defendants.
The next question was, “Is there as much traffic now ‘as there was before the construction of the road? Are there as many people walking through the street ?” The witness said that he could not answer that. To a question to another witness, “What effect, if any, has it had upon the business of that street ? What effect has the road had on the business of the street, if any ?” the objection was taken to his stating the effect on the business, on the ground that the inquiry should be as to the effect on values. The question was allowed, and the witness answered that customers did not come there any more as they had, on account of the smoke, dirt, cinders and noise, etc. There was no attempt, in any part of the trial, by the plaintiff to recover for a loss of business. The rental value of the business would be likely to be affected by any cause that would for a continuous time keep customers from the shop. And the plaintiff was entitled to show what was the effect of the defendants’ acts upon anything likely to affect rental value, afterwards proving what was the rental value as so affected.
The question, “Was business ever before the construction of the road as bad as it was at the time of the commencement of this action ?” was calculated to call for a fact that the jury might properly consider in determining whether rental value had been lessened by defendants’ acts, It, with the last question considered,. would have been pertinent in rebuttal to meet a defense, alluded to in *439 the judge’s charge, that if the diminution in rental value was caused not by the railway, but by the general flow of business higher up in ¡New York, the plaintiff was not entitled to recover. There were other exceptions of a like kind, that should not be held to be valid, but it is unnecessary to particularize them.
There were witnesses who testified to the rental value of the premises before and after construction and operation of the railroad. The judge was explicit in his charge that a recovery could be had only for a diminution of rental value, and that they must not give a verdict to plaintiff for any part of a diminution that resulted from the effect of the running of the road, excepting so far as that running was not an ordinary use of the street.
It is claimed that there was no evidence that the use of the street by the trains in running was not an ordinary and legitimate use. The court was not asked to inform the jury what were the legal qualities of an ordinary use of the street. The defendants allowed the jury to say whether, as matter of fact, the defendants’ use in the running of the trains was an ordinary one. For this purpose they could use their personal knowledge, which was common to all of them, of the manner in which streets are used, .in fact, ordinarily.
The plaintiff was allowed to prove that after the commencement of the action, the defendants placed under a point on the railway where the locomotives were in the habit of stopping, a dripping pan, to catch the drippings from the engine. This was objected to as tending to show damage after the action was begun, when the plaintiff had confined his demand to the beginning of the action. Probably the testimony did not affect the decision of the case one way or the other. Dripping and falling of ashes, from such a height as the defendants’ railway, cannot be deemed to be a part of the ordinary use of a street. Under the circumstances of this case, the jury would have had a right to find that the pan had been put up to rem *440 edy or prevent the injurious consequences of what had occurred before the action was begun.
There was on the trial an objection to a recovery of' more than nominal damages. The ground expressed for this was that no testimony in this case permitted the jury to find what, if any, diminution of rental value had been caused by the permanent structure of the defendants as distinguished from that caused by the operation of the railroad, if the jury fomid it to be only an ordinary use of the street. The jury had before them all the testimony of a substantial kind that the nature of the case admitted. It would apparently have been impossible to get an estimation of what would have been the rental value, if there had been the structure only, and what it would have been if in addition there had been smoke or cinders, but no gas, or there had been some other combination of circumstances, and which would have to be described to the expert, as one that was an extraordinary use of the street. The plaintiff would have to go without redress for his wrong, if it existed, if such testimony was necessary. Under such circumstances, of necessity, the jury must be left to judge for itself, on the testimony given, under proper instructions by the court.
The inequality of the damages assessed against the defendants respectively, is not ground for granting a new trial when the motion for it is made upon the judge’s minutes.
Judgment affirmed, with costs.